The STATE OF WYOMING and Gulf Oil Corporation, a corporation, Appellants,

v.

Stewart L. UDALL, individually and as Secretary of the Interior, Ed Pierson, individually and as Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior, David B. Morgan, Acting Manager, Oil and Gas, Cheyenne, Wyoming Land Office, Bureau of Land Management, Department of the Interior, and Union Pacific Railroad Company, a corporation, Appellees.

No. 9095.

United States Court of Appeals
Tenth Circuit.

June 14, 1967.

Dean W. Borthwick, Atty. Gen., for State of Wyoming, appellant.

James B. Diggs and Roger K. Allen, Oklahoma City, Okl. (McClintock, Mai & Urbigkit, Cheyenne, Wyo., with them on the brief), for Gulf Oil Corp., appellant.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Robert N. Chaffin, U. S. Atty., Thos. L. McKevitt, Roger P. Marquis, and Edmund B. Clark, Attys., Dept. of Justice, filed a brief on behalf of Stewart L. Udall, individually and as Secretary of the Interior, Ed Pierson, individually and as Supervisor for the State of Wyoming, Bureau of Land Management, Department of the Interior, David B. Morgan, Acting Manager, Oil and Gas, Cheyenne, Wyoming Land Office, Bureau of Land Management, Department of the Interior, appellees.

J. H. Anderson, Omaha, Neb. (F. J. Melia, Omaha, Neb., and E. T. Lazear, Cheyenne, Wyo., with him on the brief), for Union Pac. R. Co., appellee.

Before BREITENSTEIN and HILL, Circuit Judges, and BROWN, District Judge.

### BREITENSTEIN, Circuit Judge.

The controversy relates to the ownership of oil and gas deposits underlying a railroad right-of-way across a school land section in Wyoming. The Secretary upheld the claim of the United States. The appellants-plaintiffs brought a mandamus action under 28 U.S.C. § 1361 to compel recognition of Wyoming's title asserted under the act admitting that state to the union and granting to it for school purposes certain sections of land including those in dispute here.[1] The district court affirmed the decision of the Secretary.

The United States, pursuant to the Act of July 1, 1862, 12 Stat. 489, as amended by the Act of July 2, 1864, 13 Stat. 356, conveyed to a predecessor of the appellee Union Pacific Railroad Company a 400-foot right-of-way across Section 16 of one township and Section 36 of another. The survey plats of these townships showing the center line of the right-of-way were approved and filed in 1877 and in 1884. The railroad was constructed and has not been abandoned.

The 1862 Act granted to the railroad a right-of-way two hundred feet on each side of the railroad center line and also granted certain alternate sections along the route. Section 3 provided that "all mineral lands shall be excepted from the operation of this act."[2] The 1864 amendment declared that the term "mineral land" as used in § 3 "shall not be construed to include coal and iron land."[3]

The Wyoming Enabling Act provided in § 4:[4]

"That sections numbered sixteen and thirty-six in every township of said proposed State, and where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, * * * are hereby granted to said State for the support of common schools * * *."

Section 13 of the same act [5] provided that "all mineral lands shall be exempted from the grants made by this act."

On the date of the admission of Wyoming, the lands involved herein were not known to be mineral in character. The state has never selected any indemnity lands for any portion of the area with which we are concerned. In 1938 and 1950, Wyoming reconveyed to the United States all of Section 16 and part of Section 36. Both deeds contained a reservation of all mineral rights. In 1952, Wyoming executed an oil and gas lease covering the two sections, except for land not material to this case. Appellant Gulf Oil Corporation obtained these leases by assignment.[6]

In 1960, upon the application of the Union Pacific and on the authority of the 1930 Right-Of-Way Leasing Act,[7] the Cheyenne Land Office issued decisions inviting royalty bids from Union Pacific as holder of the right-of-way and compensatory royalty bids from Gulf as the owner of the oil and gas leases adjoining the right-of-way. Gulf appealed to the Director, Bureau of Land Management, who reversed. Union Pacific then successfully appealed to the Secretary of the Interior who decided

---

1. Act of July 10, 1890, Ch. 664, 26 Stat. 222.

2. 12 Stat. 492.

3. 13 Stat. 358.

4. 26 Stat. 222–223.

5. 26 Stat. 224.

6. The lease on Section 16 has expired but the lease on Section 36 is operative.

7. Act of May 21, 1930, Ch. 307, 46 Stat. 373, 30 U.S.C. §§ 301–306. This act provides for the leasing by the Secretary of the Interior of oil and gas underlying "lands embraced in railroad or other rights of way acquired under any law of the United States, whether the same be a base fee or mere easement."

that the United States owned the oil and gas underlying the right-of-way.

■ The question is one of first impression. Our attention is directed to no court decision determining whether oil and gas underlying a railroad right-of-way granted by Congress before 1871 passes to a state under a grant for school purposes. At the threshold we are met by conflicting rules. The Supreme Court has said that "land grants are construed favorably to the Government, [and] * * * nothing passes except what is conveyed in clear language."[8] It has also said that "the legislation of Congress designed to aid the common schools of the States is to be construed liberally rather than restrictively."[9] These are rules of construction and, because of the conflict, we apply neither.

■ We attach no significance to the provisions of the Enabling Act[10] exempting "mineral lands" from the school land grants. The established law is that in the construction of such grants the mineral or nonmineral character is to be determined by the known presence of valuable minerals on the effective date of the grant.[11] The parties agree that at the time of the admission of Wyoming the mineral character of these lands was not known.

■ During the period 1850 to 1871, Congress subsidized railroad construction by lavish grants from the public domain.[12] The rights-of-way here under consideration were granted during that period. In 1871, the policy changed and outright grants were discontinued.[13] The General Railroad Right-Of-Way Act was passed in 1875.[14] The language of the 1862 Act under which the Union Pacific obtained its right-of-way and the language of the 1875 Act are identical in all important respects.[15]

In considering a pre-1871 right-of-way grant to a railroad, the Supreme Court, in Northern Pacific Railway Co. v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 672, 47 L.Ed. 1044, said that the grant "was of a limited fee, made on an implied condition of reverter." This statement was repeated in Rio Grande Western Railway Co. v. Stringham, 239 U.S. 44, 47, 36 S.Ct. 5, 60 L.Ed. 136, a case concerning a post-1871 grant. Great Northern Railway Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836, pointed out that Stringham did not consider the 1871 change in congressional policy. The Court rejected the application of the "limited fee" principle to post-1871 grants, and held that the 1875 right-of-way act granted only an easement with no rights in the underlying oil and minerals.

United States v. Union Pacific Railroad Co., 353 U.S. 112, 77 S.Ct. 685, was a suit by the United States to enjoin the railroad from drilling for oil and gas on a right-of-way granted by § 2 of the 1862 Act. In holding for the United States, the Court said that Townsend was not "an adjudication concerning the ownership of mineral resources underlying the right of way in a contest between the

**8.** United States v. Union Pacific Railroad Co., 353 U.S. 112, 116, 77 S.Ct. 685, 687, 1 L.Ed.2d 693.

**9.** State of Wyoming v. United States, 255 U.S. 489, 508, 41 S.Ct. 393, 399, 65 L.Ed. 742.

**10.** 26 Stat. 224.

**11.** Davis's Administrator v. Weibbold, 139 U.S. 507, 518, 11 S.Ct. 628, 35 L.Ed. 238. See also Deffeback v. Hawke, 115 U.S. 392, 402, 6 S.Ct. 95, 29 L.Ed. 423, and State of Wyoming v. United States, 255 U.S. 489, 507, 41 S.Ct. 393.

**12.** Great Northern Railway Co. v. United States, 315 U.S. 262, 273, 62 S.Ct. 529,

86 L.Ed. 836. See also Chicago & North Western Railway Co. v. Continental Oil Co., 10 Cir., 253 F.2d 468, 471.

**13.** 315 U.S. 262, 274, 62 S.Ct. 529.

**14.** Act of March 3, 1875, Ch. 152, 18 Stat. 482, 43 U.S.C. §§ 934–939.

**15.** The 1862 Act read, 12 Stat. 491, that "the right of way through the public lands be, and the same is hereby, granted * * *." The 1875 Act reads, 43 U.S.C. § 934, that the "right of way through the public lands of the United States is granted * * *." The 1862 Act provided for a 400 foot right-of-way while the 1875 Act reduced that to 200 feet.

United States and the railroad."[16] The § 3 exemption of "mineral lands" was equated to an exemption of mineral rights and held applicable to the right-of-way granted by § 2.

In Chicago & North Western Railway Co. v. Continental Oil Co., 10 Cir., 253 F.2d 468, we considered a dispute between a railroad claiming under a right-of-way grant pursuant to the 1875 Act and the holder of an oil and gas lease covering the tract traversed by the right-of-way. We held that Great Northern controlled and that the railroad had an easement which gave it no rights to the oil and gas. In that decision, we recognized the statement in United States v. Union Pacific Railroad Co., 353 U.S. 112, 119, 77 S.Ct. 685, that the "limited fee" cases, such as Townsend, decided only that the railroads "received all surface rights to the right of way and all rights incident to a use for railroad purposes."[17] In Northern Pacific Railway Co. v. United States, 10 Cir., 277 F.2d 615, 618, a case relating to easements for canals or ditches[18] we said, on the authority of Union Pacific, that a right-of-way easement does not include underlying oil and gas.

Wyoming and Gulf assert that public policy requires that right-of-way grants made before 1871 should receive the same treatment as those made after that date; they point out that only 9,800 miles of railroad were constructed under grants made during the earlier period. They argue that the rule that title to the servient estate in a strip or gore passes without express mention in a conveyance of the encumbered tract[19] applies to rights-of-way obtained under the 1875 Act, by condemnation, and by private grants. They conclude that it should also apply to pre-1871 grants by Congress.

Logical as the argument may be, it collides with several acts of Congress. The Act of March 8, 1922, Ch. 94, 42 Stat. 414, 43 U.S.C. § 912, relates to abandoned railroad rights-of-way and provides that upon abandonment title goes to the owners of the adjoining tract without further conveyance provided that "the transfer of such lands shall be subject to and contain reservations in favor of the United States of all oil, gas, and other minerals." If Wyoming and Gulf are correct in their view that whoever owns the subdivision traversed by the right-of-way already owns the oil and gas, the oil and gas reservation in the 1922 Act is a nullity.

The 1930 Right-Of-Way Leasing Act[20] requires that before the Secretary gives an oil and gas lease to the right-of-way owner, the adjoining owners must be notified and permitted to submit a bid. If Wyoming and Gulf are right, the adjacent owners would already own the oil and gas.

We recognize that, "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one."[21] We realize that in Great Northern the Court completely disregarded the Abandoned Railroad Right-Of-Way Act and that after Great Northern such act applied only to pre-1871 grants. In the circumstances, we believe that the policy arguments are not controlling and that the decision here depends on the narrow issue of construction of the Wyoming Enabling Act in the light of the 1862 and 1864 Acts and the decisions relating thereto.

Wyoming and Gulf rest their case on the proposition that the location of a railroad right-of-way across a tract of public land of the United States does not separate the servient estate from the public domain with the result that title to the servient estate passes without express mention in a subsequent grant by

---

16. 353 U.S. 112, 118, 77 S.Ct. 685, 688.

17. See 253 F.2d 468, 471.

18. See 43 U.S.C. § 945.

19. See United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212, 217.

20. 30 U.S.C. §§ 301–306.

21. Waterman S.S. Corp. v. United States, 381 U.S. 252, 269, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370.

the United States of the traversed tract. The United States and Union Pacific concede that this rule applies to post-1871 grants but deny its application to previous grants.

■■ For the purposes of this case, we are not impressed with the labels applied to the title of the railroads in their rights-of-way across the public lands of the United States. The concept of "limited fee" was no doubt applied in Townsend because under the common law an easement was an incorporeal hereditament which did not give an exclusive right of possession. With the expansion of the meaning of easement to include, so far as railroads are concerned, a right in perpetuity to exclusive use and possession [22] the need for the "limited fee" label disappeared.

All parties rely on United States v. Union Pacific Railroad Co., 353 U.S. 112, 77 S.Ct. 685. That decision did not overrule Townsend. It recognized that under Great Northern the post-1871 grants were of an easement. It pointed out that none of the previous cases "involved the problem of rights to subsurface oil and minerals." [23] The narrow holding was that the railroad did not get title to the underlying oil and gas by virtue of the statutory grant. To reach this result, the Court specifically held that the "mineral lands" exception in § 3 of the 1862 Act applied both to the § 2 grant of right-of-way and the § 3 grant of alternate sections.[24]

■■ The application of the "mineral lands" exception to the right-of-way grant means to us that the 1864 amendment [25] saying that the term "mineral lands" does not include coal and iron land also applies to the right-of-way grant. The effect is that the railroad not only received a right-of-way with the perpetual and exclusive use of the surface but also received the right to explore for, develop, and mine the underlying coal and iron.

■ This is important because § 4 of the Enabling Act [26] provided that two sections in each township were granted for school purposes and "where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress" indemnity lands may be selected. We believe that the congressional intent was that if part of any section to be granted for school purposes had been disposed of under an act of Congress, the state on admission did not get that part of the section. The right to select lieu lands was given but the failure to exercise that right does not enlarge the grant. The question of whether coal and iron are now known, or ever have been known, to underly the right-of-way is immaterial. The railroad has the right to explore for coal and iron and if any is discovered it belongs to the railroad. Such right is in a different category from a surface easement. The grant of the coal and iron with the incidental rights of exploration and development disposed of a part of the section traversed by the right-of-way. This prior disposition served to exclude the right-of-way from the grant of school sections made by the Enabling Act.

■ The effect of this conclusion is that title to the servient estate did not pass with the conveyance of the encumbered tract. Instead, it remained in the United States and the United States retains the rights, specifically here the ownership of the underlying oil and gas, not granted to the railroad. The fact that the result which we reach treats pre-1871 grants differently from those made later is not controlling because that difference had its origin in a change of congressional policy relating to rights-of-way for railroads crossing the public domain. We agree with the Secretary

22. See Midland Valley Railroad Co. v. Sutter, 8 Cir., 28 F.2d 163, 168.

23. 353 U.S. 112, 119, 77 S.Ct. 685, 689.

24. Id. at 116, 77 S.Ct. 685.

25. 13 Stat. 356.

26. Act of July 10, 1890, Ch. 664, 26 Stat. 223.

that the oil and gas underlying the right-of-way in question are subject to disposition under the 1930 Right-Of-Way Leasing Act.

Affirmed.