No. 483. DETENBER ET AL., ADMINISTRATRICES *v.* AMERICAN UNIVERSAL INSURANCE Co. C. A. 6th Cir. Certiorari denied. *Josephine P. Hughett* and *Henry G. Fischer* for petitioners. *John P. Sandidge* for respondent.

MR. JUSTICE BLACK, dissenting.

I would grant certiorari here and reverse the action of the District Court and the Court of Appeals for rendering a summary judgment against petitioners in flagrant disregard of the right to trial by jury guaranteed by the Seventh Amendment to the Constitution. The case arose in this way. Two children riding in a car were killed in a collision with a bus. The car was driven by one Clark, who was protected by a policy of liability insurance issued by the respondent, American Universal Insurance Company. The insurance company undertook the defense of Clark in a suit for damages brought by petitioners on behalf of the deceased children. Clark claimed that the lawyer for the insurance company conducted his defense in bad faith and assigned to petitioners his claim for damages against the company.

During the settlement negotiations prior to the suit against Clark and the bus company, the insurance company lawyer urged lack of actionable negligence by Clark, and Clark later testified (in depositions taken in relation to the present action) that he went to trial with the understanding that his defense would be lack of negligence. On the day of trial of the action for damages against Clark a lawyer appeared for the insurance company and filed an amended answer in which the lawyer—on behalf of his client Clark—asserted the defense of assumption of risk, charging that the deceased children had known Clark was drunk and should not have ridden with him. The insurance company lawyer never discussed with his client Clark the alternative defenses available to him or

the significance of the filing of the amended complaint. Indeed Clark was never even advised of the fact that an amended complaint had been filed, in which he was pleading his own drunkenness in an effort to escape liability for damages. As the Court of Appeals noted in the present case, no satisfactory explanation has ever been offered for these omissions. At trial, the lawyer not only abandoned the position that the accident had been caused solely by the negligence of the bus driver but made every effort to put Clark in the worst possible light. He offered evidence that Clark had been speeding and had gone through a stop sign at the intersection, and in his summation he urged the jury to disbelieve his own client's testimony to the contrary. In addition, he permitted Clark's guilty plea in a related criminal action to be introduced without objection, and he gave Clark no opportunity to explain it. This was contrary to a specific agreement between insurance company counsel and Clark's personal lawyer (who did not take part in the trial of the civil case). The general tenor of this so-called "defense" is indicated by the insurance company lawyer's closing argument to the jury:

"I have attempted to prove that this young man was drunk when he was driving that car on Saturday night, the 15th of April. I have attempted to prove that he was operating it recklessly, and that doesn't sound like a lawyer on a man's side to try to prove his own client is drunk, does it?

. . . . .

"[N]o one has come to this boy's aid and told you that he stopped at that stop sign. . . . David Oursler gave a statement and he said, 'I am sure Michael didn't stop.' These things I knew and they convinced me, as they must you, that this young man was at fault in that accident.

. . . . .

"The thing that is bothering me worse than anything else in trying to defend him was a judgment of the Jefferson Circuit Court. Right here across the street Judge Knight entered a judgment, for this young man in person, being charged with wilful, felonious, negligent, reckless, careless and wanton operation of an automobile, . . . and there in person [Clark] pleaded guilty to that offense. . . . [T]his young man was found guilty of negligent homicide. Now, presented with that situation, believing as I do believe, I felt then and I feel now that a jury of twelve honest people is going to reach the conclusion that this young man, by witnesses and by his own admissions, caused this accident."

This defense was theoretically in Clark's interest since it purported to offer him hope of avoiding liability entirely. But it was a dangerous defense for Clark since if the jury refused to charge the plaintiffs with assumption of the risk, the damages would certainly be higher— and the amount apportioned against Clark rather than against the bus company would certainly be greater— than if the no-negligence defense had been attempted. The insurance company's interest, however, was obviously different since from its point of view the assumption-of-risk approach had no disadvantages. Its liability was limited to $10,000 under the policy and if the strategy inflated the damages above this figure, Clark would be responsible to pay the additional amount out of his own pocket.

I agree with the courts below that this is a cause of action created by the law of Kentucky, and I accept the finding that under the law of Kentucky bad faith " 'is not simply bad judgment. It is not merely negligence. . . . It implies conscious doing of wrong. . . . It partakes of the nature of fraud.' " *Harrod* v. *Meridian Mutual Insurance Co.*, 389 S. W. 2d 74, 76 (Ky. 1964). The basis

for my disagreement is that I cannot see how this evidence of bad faith on the part of the insurance company lawyer can be considered insufficient to make a case for the jury.

This record establishes for me a, rather convincing case of bad faith; at the very least I think a jury of 12 ordinary men, with a common-sense understanding of such matters, could reasonably conclude that the insurance company's conduct in this case amounted to conscious wrongdoing. By ordering summary judgment for the defendant, the courts below simply imposed their own notions as to the most plausible inference to be drawn from this record, thereby denying the petitioners their constitutionally protected right to have their case decided by 12 ordinary citizens.