Tony **RICE** et al., Plaintiffs,

v.

The **UNITED STATES** of America et al., Defendants.

Civ. No. 1127.

United States District Court,
D. North Dakota,
Southwestern Division.

Sept. 29, 1972.

George T. Dynes, Freed, Dynes & Malloy, Dickinson, N. D., for plaintiffs.

E. T. Conmy, Jr., Conmy, Feste, De-Mars & Bossart, Fargo, N. D., for Burlington Northern.

Harold O. Bullis, U. S. Atty., for defendant United States.

## MEMORANDUM

VAN SICKLE, District Judge.

At issue is the question of who owns the oil and gas under the 400 foot wide Northern Pacific Right of Way, as it passes through certain land in Stark County, North Dakota, on its way from Lake Superior to Puget Sound. The surface of the area involved is 37.03 acres.

The case comes up on cross motions for Summary Judgment, under Rule 56, Federal Rules of Civil Procedure.

There is no issue as to any material fact.

On May 20, 1862, Congress approved the Act "to secure Homesteads to actual Settlers on the Public Domain", (43 U. S.C. § 161 et seq.)

On July 2, 1864, Congress approved the Act entitled "An Act granting Lands to aid in the Construction of a Railroad and Telegraph Line from Lake Superior to Puget's Sound, on the Pacific Coast, by the Northern Route" (13 Stat. 365). Section 2 of that act covered the grant of right of way lands, a strip 200 feet on each side of a center line.

On October 29, 1884, the Commissioner of the General Land Office approved a plat of Township 139 North, Range 98 West of the 5th Principal Meridian, including the right of way as it passed through Section 8.

The railroad was constructed and has not been abandoned; and its construction antedated by several years the inception of rights to Section 8 under the Homestead Acts.

On February 25, 1904, a Homestead Patent was issued to Bartholomew O'Connell covering the South half of the Northeast Quarter and the North half of the Southeast Quarter of Section 8, Township 139 North, Range 98 West of the 5th Principal Meridian, consisting of 160 acres. The grant did not mention the interest of the Railroad, and was subject only to the usual reservations for mining, water rights, ditches and canals.

On February 23, 1910, a homestead patent was issued to Samuel W. Gillman covering the North half of the Northeast Quarter and the North half of the Northwest Quarter of Section 8, Township 139 North, Range 98 West of the 5th Principal Meridian, consisting of 160 acres. The grant did not mention the interest of the Railroad and was subject only to the usual reservations for mining, water rights, ditches and canals.

The plaintiffs are successors in interest to the homesteaders, and the defendant, Burlington Northern, is the Successor in interest to Northern Pacific Railway.

■ The matter comes to this Court through the filing of an appeal from an administrative decision. This Court has jurisdiction under 5 U.S.C. § 701 et seq. Plaintiffs have asked for relief by way of mandamus, citing 28 U.S.C. § 1361.

The District Court has original jurisdiction in any action in the nature of mandamus to compel an officer or employee of United States, or any agency thereof, to perform a duty. But, in this

case, the plaintiffs demand not that the agent perform a duty, that is make a judgment as to the title to the mineral interests involved here, but that the agent perform the duty so as to cause a certain result, that is, find the title to the minerals in the plaintiffs. The agent has performed the duty, albeit not the way the plaintiffs wanted, so the plaintiffs are not entitled to that relief, and insofar as the action seeks mandamus, that prayer is denied.

Returning to the root problem, the basic question is: So far as oil and gas under the right of way is concerned, what did the homesteader get under his patent? Unquestionably, the patent is in fee simple, there are no reservations or exclusions addressed to the railroad right of way; and the description in the patent encompasses the right of way.

Procedurally this matter began on March 28, 1968, when one Dale R. Andrus, Acting Assistant Director, Bureau of Land Management, wrote to a lawyer in Dickinson, North Dakota, stating, as to the North half, North half, Section 8 (The Gillman Patent) that "the patent did not reserve the minerals to the United States". Therefore, he concluded, the United States had no mineral interest that it could lease to the railroad under the Railroad Leasing Act, 30 U.S.C. § 301 et seq.

On December 31, 1969, Northern Pacific Railway assigned its right to apply for an oil and gas lease to right of way lands in Section 8 to A. G. Golden. The landowner protested the assignment to the Montana Land Office of the Bureau of Land Management, which dismissed the protest on July 15, 1970.

The protestors appealed to the Board of Land Appeals, which affirmed the decision of the Land Office, November 10, 1971, (George W. Zarak et al. v. Cardinal Petroleum Company, 4 IBLA 83).

In a special concurring opinion, Edwin W. Stuebling, stated that in his mind the problem should be simply stated as one of real property law as follows:

"A owns Blackacre in fee simple absolute. A conveys to B an interest of less than the whole fee in a portion of Blackacre, A retaining an interest which includes the oil and gas and certain other minerals, and a right of reversion. Subsequently, A conveys the entirety of Blackacre to C in fee simple without reservation or exception." Query, did C get the reserved interest? As he says, on that state of facts, C would ordinarily get the reserved interest.

But I analyze the case differently, and would restate his hypothetical case as follows:

"A owns Blackacre in fee simple. A conveys to B an interest of less than the whole fee in a portion of Blackacre, A retaining an interest which includes the oil and gas and certain other minerals, and a right of reversion. A appoints X, its attorney, to convey certain interests in certain lands. The scope of X's agency is both actual and apparent. X, in A's name, conveys the reserved and excepted interests in Blackacre to C, exceeding his actual and apparent authority." Query, what does C get? Undoubtedly, on this state of facts, C would get nothing so far as the conveyance exceeded the actual and apparent authority.

Thus, I believe the problem is one of actual and apparent authority of the land agent.

■ There is no controversy over the fact that the railway got either a limited fee or an easement. In any event, it got something less than fee simple by the filing and approval of a right of way plat, and construction of the railway. Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 [1903], Great Northern R. Co. v. United States, 315 U.S. 262, 62 S.Ct. 529, 86 L. Ed. 836 [1942].

At the time of the issuance of the patents, the United States did have an interest in the right of way. But, if the agency issuing the patent had neither the actual nor the apparent authority to

convey the interest of the United States under the right of way, then, of course, the deed, although it purported so to do, did not convey that interest.

The Homestead Act made available for settlement "unappropriated public lands". Act of May 20, 1862, § 1. (The identical language is still carried as part of 43 U.S.C. § 161).

■■ The general rule clearly recognized at the time of passage of the Act, and still recognized at the time of filing for the homesteads was, " . . . a tract lawfully appropriated to any purpose becomes thereafter severed from the mass of public lands, and that no subsequent law or proclamation will be construed to embrace it, or to operate upon it, although no exception be made of it, . . . ". Hastings & D. R. Co. v. Whitney, 132 U.S. 357, 10 S.Ct. 112, 33 L.Ed. 363 (1889) citing Wilcox v. Jackson, 38 U.S. 425, 13 Pet. 425, 10 L. Ed. 264 (1839). In Hastings, the Court held that a prior homestead entry took the land out of the public domain so that it was not available to be claimed by the railroad as transferred under a grant of supporting lands. The Court further said "so long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregated it from the public domain, and therefore precludes it from subsequent grants". As pointed out in Hastings, this rule was of wide general knowledge and application. Any informed advisor, or homesteader must surely have been cognizant of the rule. Therefore, the Homesteader cannot reasonably have claimed that in taking a homestead subject to a railroad right of way, he acquired an interest under the right of way. Subsequent acts by the United States are not inconsistent with this analysis, because those acts specifically are directed to lands in the public domain either because they have never been withdrawn, or, if at one time withdrawn, were again returned to the public domain. For an example of a return,

see Hastings, supra. The subsequent legislation I refer to includes:

| | |
|---|---|
| Act of March 3, 1909 | (30 U.S.C. § 81) |
| Act of June 22, 1910 | (30 U.S.C. §§ 83, 84, 85) |
| Act of July 17, 1914 | (30 U.S.C. § 121) |
| Act of July 17, 1914 | (30 U.S.C. § 123) |
| Act of Dec. 29, 1916 | (43 U.S.C. § 299) |
| Act of Feb. 25, 1920 | (30 U.S.C. § 181) |

And 43 U.S.C. § 891 is wholly consistent with this analysis. This analysis is also consistent with the holding of Wyoming v. Udall, 379 F.2d 635 (CA 10 1967, cert. denied 389 U.S. 985, 88 S.Ct. 470, 19 L.Ed.2d 479 [1967]). I believe the Udall case to be relevant and the holding to be applicable to the state of facts in this case. Briefly, the Udall case ran the entire gamut of appeals and is reported procedurally in:

Decision of the Land Office, dated September 7, 1960, held U.S. owned oil and gas.

Decision of the Director, Bureau of Land Management, dated May 1, and June 12, 1962, reversed. Solicitor's opinion, dated February 16, 1965, (72 I.D. 76), reversed the Director's decision. Wyoming v. Udall, 255 F. Supp. 481 (D.Wyo.1966), affirmed the decision of the solicitor. Wyoming v. Udall, 379 F.2d 635 (CA 9 1967) cert. denied by Supreme Court, 389 U.S. 985 [88 S.Ct. 470, 19 L.Ed.2d 479] (1967)

In Wyoming v. Udall, supra, at page 640, the Court said "title to the servient estate did not pass with the conveyance of the encumbered tract". In this case, the servient estate was the estate under the railroad right of way, and the encumbered tract was the legal subdivision conveyed by the United States to Wyoming under its school grant.

Therefore, I find:

1. That the patents issued to the homesteaders did not convey the surface or mineral interests on the occupied railroad right of way.

2. That the oil and gas interests were available for leasing under the Railroad Leasing Act.

3. That the decision of the Board of Land Appeals affirming the decision of the Land Office is affirmed.