ENERGY TRANSPORTATION
SYSTEMS, INC., a Delaware
Corporation, Appellee,

v.

UNION PACIFIC RAILROAD COMPA-
NY, a Utah Corporation,
Appellant, (two cases).

Nos. 77-1770, 78-1680 and 78-1681.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted March 13, 1979.

Decided Oct. 4, 1979.

Henry A. Burgess, Sheridan, Wyo. (Kim D. Cannon and Burgess & Davis, Sheridan, Wyo., on the brief), for appellee in 77-1770.

Frederick G. Loomis of Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., on the brief, for appellant in 77-1770.

Howard F. Coray, (C. Barry Schaefer and Harry Lustgarten, Jr., Omaha, Neb., on the brief), for appellant in 78-1680 and 78-1681.

Eidson, Lewis, Porter & Haynes, Topeka, Kan., on brief, for appellant in 78-1680 and 78-1681.

William C. Farmer, Wichita, Kan. (Smith, Shay, Farmer & Wetta, Wichita, Kan., on the brief), for appellee in 78-1680 and 78-1681.

Before McWILLIAMS and BARRETT, Circuit Judges, and MILLER, Judge.*

McWILLIAMS, Circuit Judge.

These three appeals, one from a judgment of the United States District Court for the District of Wyoming (No. 77-1770) and two from a judgment of the United States District Court for the District of Kansas (Nos. 78-1680 and 78-1681) have been separately briefed, but companioned for purposes of oral argument. All will be treated in this opinion.

---

* Honorable Jack R. Miller, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

These appeals concern a dispute between Energy Transportation Systems, Inc. (ETSI) and Union Pacific Railroad Company, wherein the former asserts the right to construct a pipeline under and across the latter's right-of-way. In each instance ETSI prevailed, and Union Pacific now appeals. These several appeals will be treated *seriatim*.

No. 77–1770 (the Wyoming case).

■ ETSI proposes to build an underground pipeline to transport finely ground coal in a water slurry from coal fields in Wyoming to Arkansas. We are here concerned with the North Half of Section 2, Township 14 North, Range 64 West of the Sixth Principal Meridian in Laramie County, Wyoming. Union Pacific's predecessor was granted a 400-foot right-of-way over and across this particular half section and the Union Pacific presently maintains its main transcontinental railroad through Wyoming over this right-of-way, traversing the half section in an east-west direction.

ETSI has acquired various rights-of-way, well fields and water rights to help in the designing, planning and developing of the slurry pipeline. ETSI obtained one such right-of-way from Wayne and Vera Nicodemus, the owners of a tract of land also located in the North Half of Section 2, Township 14 North, Range 64 West of the Sixth Principal Meridian in Laramie County, Wyoming. The Nicodemuses are the successors in interest to one Maggie Majors, who acquired the original homestead patent in 1913. The original patent conveyed the entire North Half of Section 2, subject only to vested and accrued water rights for mining, agriculture, manufacturing and other purposes, and without any exceptions or reservations other than usual reservation for ditches or canals constructed by authority of the United States. The patent did not exclude or even mention the railroad right-of-way.

The Union Pacific's railroad tracks traverse and cut in two the tract of land owned by the Nicodemuses. ETSI acquired from the Nicodemuses a right-of-way to construct a coal slurry pipeline under and across the Nicodemus property. To accomplish such, ETSI's proposed pipeline must run beneath and across Union Pacific's right-of-way. However, Union Pacific objects to ETSI's proposal to build a pipeline under Union Pacific's right-of-way in the North Half of Section 2.

It was in this general setting that ETSI brought the present declaratory judgment proceeding, seeking thereby to establish its right to build a slurry pipeline beneath the Union Pacific's right-of-way in the North Half of Section 2. Both parties eventually agreed that there were no disputed facts and that the only questions were purely legal ones. Accordingly, each moved for summary judgment. The trial court granted ETSI's motion, and denied Union Pacific's, and entered judgment judicially determining that ETSI had the right to construct and operate a coal slurry pipeline in the sub-surface strata under the Union Pacific's right-of-way in the North Half of Section 2, so long as such did not interfere with Union Pacific's use of its railroad right-of-way for purposes of railroad operations and maintenance. It is from such judgment that Union Pacific now appeals.

In resolving this matter the trial court filed a Memorandum Opinion, which now appears as *Energy Transp. Systems, Inc. v. U. Pac. R. Co.*, 435 F.Supp. 313 (D.Wyo. 1977). In his Memorandum Opinion, Judge Brimmer set forth the background facts with commendable detail, and carefully spelled out his legal reasoning. We do not intend to repeat such in the present opinion. It is sufficient here to simply note that, in essence, Judge Brimmer held that under the Pacific Railroad Acts of 1862 and 1864 (Act of July 1, 1862, § 1 *et seq.*, 12 Stat. 489 as amended by the Act of July 2, 1864, 13 Stat. 356), Union Pacific's predecessor in interest acquired only a right-of-way, and that the servient estate, i. e. the sub-soil under the right-of-way, remained in the United States and continued to be a part of "unappropriated public lands." Accordingly, such servient estate later passed to Maggie Majors under the homestead patent issued in 1913. As mentioned above, the Nicodemuses were

the successors in interest to Maggie Majors, and the Nicodemuses in turn granted ETSI the right-of-way which engendered the present controversy.

Our starting point is to note that it is apparently agreed that under the homestead patent in 1913 Maggie Majors acquired *all* interest that the United States *then* possessed in the North Half of Section 2, with certain possible exceptions not here pertinent. The real question then, is what interest did the United States have in the North Half of Section 2 in 1913? The answer to that question depends, in turn, on the interest granted the railroad by the United States under the Pacific Railroad Acts of 1862 and 1864. If that grant included the servient estate to the surface right-of-way, then the servient estate was removed from the category of unappropriated public lands, and the servient estate could not have been conveyed to Maggie Majors under her homestead patent in 1913. If, however, the servient estate beneath the right-of-way was not granted the railroad by the United States, then the servient estate remained in the category of unappropriated public lands and thereafter passed to Maggie Majors under her homestead patent.

In this appeal, unlike the other appeals, we are concerned with an even numbered section of land. Hence, section 3 of the Pacific Railroad Act of 1862 has no immediate pertinency to the present problem. Under section 3 of that Act the railroad was granted alternate, odd-numbered sections for the purpose of inducing the railroad to construct the line, i. e., the railroad could sell the alternate sections and use the proceeds of such sales to finance the building of the railroad. We are here concerned with section 2 of the Pacific Railroad Act of 1862, which provides as follows:

> *And be it further enacted*, That the right of way through the public lands be, and the same is hereby, granted to said company for the construction of said railroad and telegraph line; . . . said right of way is granted to said railroad to the extent of two hundred feet in width

on each side of said railroad where it may pass over the public lands, including all necessary grounds for stations, buildings, workshops, and depots, machine shops, switches, side tracks, turntables, and water stations . . . ..

The right-of-way which Union Pacific presently has in the North Half of Section 2 was obtained by its predecessor in interest by grant pursuant to the aforesaid section 2 of the Pacific Railroad Act of 1862. Under the terms of that statute Union Pacific's predecessor was granted a right-of-way to the extent of 200 feet in width on each side of said railroad through public lands for the construction of a railroad line. Such words themselves suggest that Union Pacific's predecessor received something less than a fee simple absolute, and, in the words of the statute, received a right-of-way.

To a considerable degree Union Pacific here relies on *Northern Pacific Railway Co. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903). In that case the Supreme Court said that a right-of-way given under section 2 of the Pacific Railroad Act of 1862 granted a "limited fee" with an implied condition of reverter, and removed the "land forming the right of way" from the category of public lands subject to homestead. *Townsend* involved an adjacent landowner who was laying claim to a part of the railroad's 400-foot surface right-of-way. *Townsend* did not involve the servient estate underlying the railroad's right-of-way.

The "limited fee" concept enunciated in *Townsend* was severely cut back in *United States v. Union Pacific Railroad Co.,* 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957). That case involved a dispute between the United States and Union Pacific over the right to drill for oil and gas underlying the railroad's right-of-way. The Supreme Court in that case held that the exception of "mineral lands," referred to in section 3 of the Pacific Railroad Act of 1862, applied also to rights-of-way granted under section 2 of that same Act, and that under a grant of a right-of-way under section 2 the railroad received no right to oil and gas under-

lying the right-of-way. Apparently, the Supreme Court in *Townsend* was also faced with the limited fee argument. In that regard the Court stated that "the most the 'limited fee' cases decided was that the railroad received all *surface rights* to the right of way and all rights incident to a use for railroad purposes." (Emphasis added.) 353 U.S. at 119, 77 S.Ct. at 689.

In line with *United States v. Union Pacific, supra,* this Court in *Wyoming v. Udall,* 379 F.2d 635, 640 (10th Cir. 1967), *cert. denied,* 389 U.S. 985, 88 S.Ct. 470, 19 L.Ed.2d 479, clearly indicated that there was no present need for the "limited fee" concept. In that case we said:

> For the purposes of this case, we are not impressed with the labels supplied to the title of the railroads in their rights-of-way across the public lands of the United States. The concept of 'limited fee' was no doubt applied in *Townsend* because under the common law an easement was an incorporeal hereditament which did not give an exclusive right of possession. With the expansion of the meaning of easement to include, so far as railroads are concerned, a right in perpetuity to exclusive use and possession, the need for the 'limited fee' label disappeared.

Without belaboring the point, we are convinced, as was the trial court, that the grant to Union Pacific's predecessor pursuant to section 2 of the Pacific Railroad Act of 1862 was just what the statute said it was, the grant of the right-of-way, and did not convey title to the servient estate underlying the right-of-way. Such being the case, the servient estate remained with the United States and later passed under the homestead patent to Maggie Majors. We believe the result reached by the trial judge to be the proper one, and we generally subscribe to his reasoning.

Judgment affirmed.

Nos. 78–1680 and 78–1681 (the Kansas cases).

The Kansas cases concern two actions originally filed in district courts for the State of Kansas and later removed to the United States District Court for the District of Kansas, where they were consolidated. In each case ETSI sought a judicial declaration that it had the right to construct a coal slurry pipeline beneath the Union Pacific's right-of-way.

Unlike the Wyoming case, both of the Kansas cases involved odd-numbered sections of land along the railroad line. As indicated above, under section 3 of the Pacific Railroad Act of 1862 the railroad was granted alternate sections, designated by odd numbers, along the route for the purpose of aiding in the construction of the railroad line. Also unlike the Wyoming case, ETSI in the instant case bases its interest *through* the Union Pacific's predecessor in interest.

In 1879 Union Pacific's predecessor in interest conveyed its interest in Section 31, Township 12, Range 21 West of the Sixth Principal Meridian to one Rachel Boyer by warranty deed, reserving to the grantor railroad "a strip of land 400 feet wide to be used by the first party for right of way and other railroad purposes. . . ." Boyer's interest is now in the hands of the present owners, the Wynns, who in turn have granted ETSI a right-of-way to build a coal slurry pipeline across said tract, including the sub-surface of any railroad tract located thereon.

In the second Kansas case, Union Pacific's predecessor in interest conveyed Section 3, Township 11, Range 29 West of the Sixth Principal Meridian to a Mr. Good, reserving to the grantor railroad "the right of way for said railway as now located on the premises. . . ." Ownership of that tract of land has now passed to the present owners, the Gassmans, who have in turn granted ETSI a pipeline easement identical to the one mentioned in the paragraph immediately above.

The trial court in the Kansas cases held that under the Pacific Railroad Act of 1862 Union Pacific's predecessor in interest was granted a fee interest, limited only by a reverter interest and a mineral interest, in each of the two sections involved, and that

in each instance Union Pacific's predecessor acquired the servient estate beneath the right-of-way. The trial court did not decide whether such interest was acquired under section 2 or 3 of the Pacific Railroad Act of 1862. The trial court noted that Judge Brimmer in the earlier case arising out of Wyoming held that Union Pacific's predecessor did *not* acquire the servient estate underlying the railroad's right-of-way by virtue of the grant provided for in section 2 of the Pacific Railroad Act of 1862. Judge Rogers, in the Kansas cases, determined that he did not need to reach the issue decided by Judge Brimmer in the Wyoming case, inasmuch as the Kansas cases, unlike the Wyoming case, involved odd-numbered sections granted to the railroad under section 3 of the Pacific Railroad Act of 1862 and that by such grant the railroad received a fee interest in the section, including a fee interest in the servient estate underlying the railroad right-of-way, limited only by the interest reserved by the United States.

Having determined that Union Pacific's predecessor in interest acquired the servient estate underlying its right-of-way in each of the two sections, the trial court proceeded to answer two additional questions: (1) What interest in the servient estate underlying the rights-of-way *could* the railroad convey? and (2) What interest in such servient estate *did* the railroad convey to the predecessors in interest of the grantors of ETSI's easement? In this regard the trial court concluded that "the railroad *could*, consistent with all federal law, convey the servient estate beneath the right of way." 456 F.Supp. at 163. By way of answer to the second question, the trial court held that the railroad conveyed to the grantees the servient estate beneath the railroad's rights-of-way, except to the extent that such would interfere with the operation of the railroad. We agree with both of these conclusions.

The starting point in the Kansas cases is whether the railroad ever received title to the servient estate underlying the two rights-of-way here involved. In view of our holding in the Wyoming case, we do *not* believe that the railroad received such title by the grant made pursuant to section 2 of the Pacific Railroad Act of 1862. We are convinced, however, that such title was obtained by the railroad in the grant made pursuant to section 3 of that Act.

A prime contention of Union Pacific is that under the rationale of *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), the railroad could not convey to another its interest in the servient estate underlying the respective rights-of-way. As mentioned earlier, *Townsend* involved the effort by an adjacent landowner to acquire through adverse possession a portion of the 400-foot right-of-way previously granted the railroad. *Townsend* was concerned with surface area, and not the servient estate underlying the right-of-way. We believe the true holding in *Townsend* is that the railroad cannot alienate any interest *in the right-of-way* which was granted it by the United States for the express purpose of building a railroad. However, the right-of-way must again be distinguished from the servient estate underlying the right-of-way.

We agree with the trial court that under the deeds from the railroad to the two grantees, Boyer and Good, the servient estate underlying the two rights-of-way passed. The only reservations pertained to the rights-of-way and, as indicated, such does not encompass the servient estate underlying the rights-of-way. We subscribe to the trial court's reasoning in this particular matter. See its Memorandum and Order for detail. 456 F.Supp. 154, 163–68 (1978).

Union Pacific also complains about the form of the trial court's judgment and order. It requires Union Pacific to use its "best efforts to provide such alternate rights-of-way" should ETSI's pipeline ever interfere with the operation of Union Pacific's railroad. Such, to us, is a reasonable requirement.

Judgments affirmed.