619 F.2d 696
 ENERGY TRANSPORTATION SYSTEMS, INC., a Delaware Corporation,
and Board of Educational Lands and Funds of the
State of Nebraska, Appellees,
v.
UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Appellant.
 No. 79-1259.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 10, 1979.
Decided Feb. 22, 1980.
 
 Howard F. Coray, Los Osos, Neb. (argued), Harry Lustgarten, Jr., F. Jerome Given and Daniel P. Morisseau, Omaha, Neb., on brief, for appellant.
 Donn E. Davis, Crosby, Guenzel, Davis, Kessner & Kuester, Lincoln, Neb. (argued), and Mark D. McGuire, Lincoln, Neb., on brief, for appellee.
 Before ROSS and STEPHENSON, Circuit Judges, and McMANUS, District Judge.*
 ROSS, Circuit Judge.
 
 
 1
 Union Pacific Railroad Company appeals from a decision of the district court[1] declaring valid the transfer of an easement interest from the State of Nebraska to Energy Transportation Systems, Inc. (ETS).
 
 
 2
 On appeal, we are asked to determine: (1) the nature of Union Pacific's interest in lands comprising its right-of-way under the Pacific Railroad Acts of 1862 and 1864, and (2) the extent of any subsurface interest in the land underlying Union Pacific's right-of-way granted to Nebraska pursuant to the "in lieu" school land patent of 1899. We affirm.
 
 
 3
 Federal jurisdiction was invoked both on the basis of diversity of citizenship, 28 U.S.C. § 1332, and under 28 U.S.C. § 1331(a), as a case arising under the laws of the United States, and under the federal declaratory judgment statute, 28 U.S.C. §§ 2201 and 2202. This court has jurisdiction of this appeal under 28 U.S.C. §§ 1291 and 1294.
 
 
 4
 All parties[2] to this action moved for summary judgment, stipulating that there were no disputed facts and that only legal questions remained for the district court's determination. The district court granted ETS's motion for summary judgment; Union Pacific's motion was denied.
 
 
 5
 In 1977, ETS acquired an easement interest from the State of Nebraska for the purpose of constructing and operating a coal slurry pipeline in the subsurface of a 100 foot-wide strip of land running in a north-south direction under Lot 2 of Section 18, Township 13 North, Range 39 West of the Sixth P.M., Keith County, Nebraska. Union Pacific since 1868 has maintained a 400 foot-wide right-of-way across the same parcel of land in an east-west direction.
 
 
 6
 ETS's easement interest is partially in the servient estate of a right-of-way granted to Union Pacific by the United States pursuant to Act of Congress of July 1, 1862, ch. 120, 12 Stat. 489, as amended by the Act of July 2, 1864, ch. 216, 13 Stat. 356. The district court held that under the Acts of 1862 and 1864, Union Pacific acquired only a right-of-way, and that the servient estate remaining in the United States was effectively transferred from the United States to the State of Nebraska, ETS's predecessor in interest, pursuant to Section 7 of the Nebraska Enabling Act. Accordingly, Nebraska's transfer to ETS of a subsoil, pipeline easement interest in the servient estate was upheld. That interest was found by the district court to be subject to Union Pacific's right-of-way interest, which consists of "all surface rights to the right of way and all rights incident to a use for railroad purposes." United States v. Union Pacific Railroad, 353 U.S. 112, 119, 77 S.Ct. 685, 689, 1 L.Ed.2d 693 (1957).
 
 I. The Nature of Union Pacific's Interest
 
 7
 In 1862, the Union Pacific was granted a right-of-way through public lands for the construction of a railroad by the Act of Congress of July 1, 1862, ch. 120, Section 2, 12 Stat. 489. Section 2 of the Act provides:
 
 
 8
 And be it further enacted, That the right of way through the public lands be, and the same is hereby, granted to said company for the construction of said railroad and telegraph line; and the right, power, and authority is hereby given to said company to take from the public lands adjacent to the line of said road, earth, stone, timber, and other materials for the construction thereof; said right of way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass over the public lands, including all necessary grounds for stations, buildings, workshops, and depots, machine shops, switches, side tracks, turntables, and water stations.
 
 
 9
 Several decisions have construed this statute as limiting the nature of the right-of-way to something less than a fee simple absolute. By its terms, the statute explicitly grants the railroad only a "right of way" in the land.
 
 
 10
 Union Pacific relies to a great extent on the Supreme Court's construction of the nature of its right-of-way in Northern Pacific Railway v. Townsend, 190 U.S. 267, 271, 23 S.Ct. 671, 672, 47 L.Ed. 1044 (1903). In that case, the railroad's interest in constructing and operating a transcontinental railroad was held paramount to an individual's claim by adverse possession of an exclusive right to possess the land for private purposes. The right-of-way given under the 1862 Act was described as a "limited fee, made on an implied condition of reverter (to the government) in the event that the company ceased to use or retain the land for (railroad) purpose(s)." Id.
 
 
 11
 Townsend involved an individual's claim by adverse possession to the surface of land subject to the railroad's right-of-way which required no determination reaching the nature of the servient estate underlying the railroad's right-of-way. Nonetheless, the Supreme Court noted that the right-of-way was granted "through the public domain" and, as such, was subject to the police power of the state. Id. at 272, 23 S.Ct. at 673. It also stated "that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed." Id. at 272, 23 S.Ct. at 673.
 
 
 12
 Moreover, in United States v. Union Pacific Railroad, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957), the Supreme Court, in construing Section 2 of the 1862 Act, held that oil and gas rights beneath Union Pacific's right-of-way were reserved to the United States because the 1862 grant was for limited railroad purposes not encompassing drilling for oil or gas. The Supreme Court also held that the reservation of "mineral lands" referred to in Section 3[3] of the Pacific Railroad Act of 1862 applied as well to rights-of-way granted under Section 2 of that Act, so that a railroad claiming a right-of-way pursuant to Section 2 received no right to oil and gas underlying its right-of-way. In what we consider an effort to explicate and perhaps narrow the "limited fee" concept, the Supreme Court stated that "(t)he most that the 'limited fee' cases decided was that the railroads received all surface rights to the right of way and all rights incident to a use for railroad purposes." Id. at 119, 77 S.Ct. at 689.
 
 
 13
 In Rice v. United States, 479 F.2d 58 (8th Cir.), cert. denied, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973), this court approved a decision of the district court, Rice v. United States, 348 F.Supp. 254, 256 (D.N.D.1972), describing the nature of the railroad's right-of-way as "either a limited fee or an easement. In any event, it got something less than fee simple * * *." The sole issue before the court in Rice was the ownership of the oil and gas rights under a right-of-way owned by Northern Pacific Railroad. We affirmed the district court's finding that the United States retained title to the oil and gas rights under the railroad's right-of-way. The district court also held that the oil and gas rights were not effectively conveyed to homesteaders since the government agency issuing the homestead patent lacked the authority to convey the retained interest of the United States beneath the right-of-way.
 
 
 14
 In two recent decisions, Energy Transportation Systems, Inc. v. Union Pacific Railroad, 606 F.2d 934 (10th Cir. 1979), and Wyoming v. Andrus, 602 F.2d 1379 (10th Cir. 1979), the Tenth Circuit considered the nature of Union Pacific's right-of-way interest granted pursuant to Section 2 of the Act of 1862. We agree entirely with that court's characterization of the nature of Union Pacific's right-of-way. As aptly stated by the court in Energy Transportation Systems, Inc. v. Union Pacific Railroad, supra, 606 F.2d at 937:
 
 
 15
 (W)e are convinced, as was the trial court, that the grant to Union Pacific's predecessor pursuant to section 2 of the Pacific Railroad Act of 1862 was just what the statute said it was, the grant of the right-of-way, and did not convey title to the servient estate underlying the right-of-way.[4]
 
 
 16
 Accordingly, we affirm the district court's determination that Union Pacific's interest in Lot 2 is limited to surface and other rights used in the construction and operation of the railroad.
 
 II. The Nature of the State's Interest
 
 17
 Next, we must consider the grants to Nebraska for school purposes. The State of Nebraska claims an interest in the land as a result of its "in lieu" selection of Lot 2 in 1899 pursuant to Nebraska Enabling Act of 1864. By Section 16 of the Act of Congress of May 30, 1854, 10 Stat. 277, 283, Sections numbered 16 and 36 in each township were reserved to the territory of Nebraska for the support of schools. Section 7 of the Nebraska Enabling Act, the Act of Congress of April 19, 1864, 13 Stat. 47, preserved the reservation of Sections numbered 16 and 36 for school land purposes, and provided further that alternate sections be granted to the state for the support of its schools where Sections numbered 16 and 36 had been sold or "otherwise disposed of" by any Act of Congress.[5] The parties have stipulated that on February 12, 1899, the State of Nebraska acquired title to Lot 2 as a result of deficiencies in Sections 16 and 36. Therefore pursuant to the Nebraska Enabling Act of 1864, the United States granted to Nebraska, lands selected in lieu of the designated sections which had previously been disposed of for the support of the common schools.
 
 
 18
 In Wyoming v. Andrus, 602 F.2d 1379 (10th Cir. 1979), the State of Wyoming sought to exclude from its patent to school sections, lands included within the railroad's right-of-way and, by reason of such exclusion, to be entitled to make indemnity in lieu selections. The court held that a grant to the railroad of right-of-way and profits a prendre in coal and iron in aid of building the railroad did not constitute a disposition of property within the meaning of the Wyoming Enabling Act. Accordingly, the court concluded that Congress intended Wyoming to take the school land grant sections subject to the railroad's right-of-way and that Wyoming was not entitled to "in lieu" selections.
 
 
 19
 We agree with the court in Wyoming v. Andrus, supra, 602 F.2d at 1385, that lands conveyed for a right-of-way by the 1862 Act, as amended, do not constitute lands "otherwise disposed of" within the meaning of state enabling acts. In this case Section 18, acquired "in lieu" of other lands, was likewise not "otherwise disposed of" and was, as the parties have stipulated, granted to the State of Nebraska for school purposes in 1899 pursuant to Section 7 of the Nebraska Enabling Act. We agree with the conclusion of the district court that the conveyance of Section 18 from the United States to the State of Nebraska as school land pursuant to Section 7 of the Nebraska Enabling Act involved a transfer to the State of Nebraska of at least the subsurface rights in the right-of-way land involved in this controversy.
 
 
 20
 Accordingly, we hold that the interest retained by the United States which was subsequently granted to the State of Nebraska for school purposes, conveyed sufficient title in the servient estate underlying the railroad right-of-way to permit the state to convey to ETS a pipeline easement interest in the subsurface of the servient estate. That interest, of course, remains subject to the encumbrance of Union Pacific's right-of-way to use of the land for the purpose of operating a railroad and subject to any reservation of mineral rights retained by the United States.
 
 
 21
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable EDWARD J. McMANUS, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation
 
 
 [1]
 The Honorable WARREN K. URBOM, Chief Judge of the United States District Court for the District of Nebraska
 
 
 [2]
 The Board of Educational Lands and Funds of the State of Nebraska joined in the motion of the plaintiff-appellee Energy Transportation Systems, Inc., for summary judgment. The United States declined to join as a party to this action, claiming that it had no interest that could be affected by the granting of a pipeline right-of-way to Energy Transportation Systems, Inc
 
 
 [3]
 Section 3 of the Pacific Railroad Act of 1862 granted the railroad alternate, odd-numbered sections of land along the railroad line for the purpose of inducing the railroad to construct the line. Under Section 3 the railroad was permitted to sell alternate sections and to use the proceeds to finance the building of the railroad, limited only by the interests reserved therein by the United States. Our only direct interest is in Section 2 of the Act, since by its terms, Section 3 applies only to odd-numbered sections of land
 
 
 [4]
 The court went on to conclude that the servient estate remaining with the United States was later passed from the United States to a patentee and her successors under the Wyoming Homestead Act of 1862. Therefore, the patentee's successors in title were permitted to grant ETS an underground pipeline right-of-way subject to reasonable use of the surface by the railroad. In so holding, the court noted that ETS could not interfere with the railroad's operations
 In a companion case also decided by the court in Energy Transportation Systems, Inc. v. Union Pacific Railroad, 606 F.2d 934 (10th Cir. 1979), the court held that the railroad's predecessor in interest, as grantee of odd-numbered sections of land along its railroad line under Section 3 of the Pacific Railroad Act of 1862, acquired the servient estate also; that the railroad subsequently conveyed that servient estate to other grantees; and that therefore, the subsequent grantees had the power to effectively convey easements to ETS for its underground coal and slurry pipeline beneath the railroad's rights-of-way. Id. at 938.
 
 
 [5]
 By the Act of Congress of February 26, 1859, 11 Stat. 385, Congress provided that where Sections 16 and 36 had been preempted by settlers, or where those sections were deficient for any reason, the states were permitted to select other lands in lieu of Sections 16 or 36 for the support of the schools