**1028**

Gary R. MARSHALL, Leonard E. Chamberlain, Jr., and Roxy R. Chamberlain, Plaintiffs–Appellees,

v.

CHICAGO AND NORTHWESTERN TRANSPORTATION COMPANY, Russell G. Forgey, J. Kent Kinniburgh, James H. Lyle, Forgey Ranch Company and Casper Creek Development, Inc., Defendants–Appellants.

No. 93–8020.

United States Court of Appeals,
Tenth Circuit.

Aug. 5, 1994.

Loyd E. Smith of Lathrop & Rutledge, P.C., Cheyenne, WY, for plaintiffs-appellees.

B.J. Baker (C. John Cotton with him on the brief) of Brown & Drew, Casper, WY, for defendants-appellants.

Before ANDERSON, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and SHADUR, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

This case concerns the present ownership of the land underlying an abandoned railroad right of way situated in Natrona County, Wyoming. The district court granted summary judgment in favor of the present owner of the so-called servient estate, and the railroad company and its assignees appeal.

This controversy has its genesis in 1905 when the United States, under the General Railroad Right of Way Act of 1875, granted the Wyoming & Northwestern Railway Company a 200–foot–wide right of way through, *inter alia*, the W½SW¼ of Section 33, Township 35 North, Range 80 West of the 6th P.M., Natrona County, Wyoming. 43 U.S.C. §§ 934–39 (1988).[1] At that time Section 33

---

* Honorable Milton I. Shadur, Senior District Judge, Northern District of Illinois, sitting by designation.

1. § 934. Right-of-way through public lands granted to railroads

The right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the

was entirely public land owned by the United States. The right of way granted Wyoming & Northwestern Railway was later conveyed to its successor, the Chicago & Northwestern Railway Company and thereafter to the Chicago and Northwestern Transportation Company, the latter being the lead defendant in the present proceeding.

By an instrument dated March 18, 1980, the Chicago and Northwestern Transportation Company, (hereinafter referred to as "CNWT"), purported to convey a 60–foot–wide strip of the 200–foot–wide right of way to the Kinniburgh and Lyle partnership. The partnership then purported to convey its interest in the right of way to Casper Creek Development, Inc. On June 4, 1990, shortly before all the track was removed, CNWT purported to convey the remaining 140 feet width of the right of way to Forgey Ranch Company.

CNWT filed an application for abandonment of the right of way with the Interstate Commerce Commission, which was approved on November 30, 1988. CNWT actually discontinued rail service on the subject right of way on or about January 15, 1989, and completed track removal on or about August 31, 1990.

The original patent to the Section 33 parcel was issued by the United States to the heirs of Minnie M. Wade as part of a homestead patent issued on October 30, 1926. Without tracing the complete chain of title, we do note that in 1953 the See Ben Realty Company conveyed the subject parcel back to the United States in a land trade. The United States thereafter held the subject parcel until 1973, when it repatented the parcel to Brewer Ranch Corporation. The 1973 patent to Brewer Ranch Corporation excepted a right of way for ditches and canals, excepted certain mineral deposits and expressly made the conveyance "subject" to the CNWT right of way. Gary Marshall acquired fee title to the subject property by virtue of a warranty deed dated June 10, 1983, from Brewer Ranch Corporation. That deed mistakenly "excepted" the right of way from the conveyance. That mistake, however, was rectified by a subsequent quitclaim deed from Brewer Ranch Corporation to Marshall conveying any remaining interest of Brewer Ranch Corporation in the right of way. Marshall later entered into a contract to sell the subject parcel to Leonard and Roxy Chamberlain.

It was in this general setting that on June 9, 1992, Marshall and the Chamberlains brought the present action in the United States District Court for the District of Wyoming. Named as defendants were CNWT; Forgey Ranch Company, a partnership; Russell G. Forgey, individually; J. Kent Kinniburgh and James H. Lyle, a partnership; Kinniburgh and Lyle, individually; and Casper Creek Development, Inc.

The gist of the complaint was that under applicable federal law, upon the abandonment of the right of way by CNWT, the property interest therein reverted to the owner of the servient estate, i.e. Marshall. Counts 1 and 2 were based on 43 U.S.C. § 912 (1988). The plaintiffs also asserted a third supplemental state law claim. The defendants, by answer, asserted that federal law did not dictate the result urged by Marshall. In addition, the defendants, at least some of them, made claim to the land underlying the former right of way by virtue of adverse possession.

The plaintiffs filed a motion for summary judgment on all their claims, and in support thereof relied "on the pleadings, the exhibits submitted herewith, and an accompanying memorandum of law."

After hearing, the district court granted plaintiffs' motion for summary judgment on December 11, 1992, the court's order now appearing as *Marshall v. Chicago & Northwestern Transp. Co.*, 826 F.Supp. 1310

---

Secretary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road.

(D.Wyo.1992). A so-called "Corrected Judgment and Decree of Abandonment and Quiet Title" was entered on January 20, 1993. That judgment, minus the caption, reads as follows:

THE COURT, having entered a decision in this matter by its order granting plaintiff's motion for summary judgment,

ORDERS, ADJUDGES, AND DECREES AS FOLLOWS:

1. That defendant, Chicago and Northwestern Transportation Company ("C & NW") on or before August 31, 1990, abandoned its right-of-way traversing plaintiffs' property, such property being described as the West 1/2 Southwest 1/4 of Section 33, Township 35 North, Range 80 West of the Sixth P.M., Natrona County, Wyoming, and C & NW did not convey any portion of said right-of-way to a state, county, or municipality within one year of such abandonment.

2. That, subject to the contract for deed with Plaintiffs Leonard E. Chamberlain, Jr. and Roxy R. Chamberlain, Plaintiff Gary R. Marshall owns in fee simple, and is entitled to the quiet and peaceful possession of, the real property encompassed by the former C & NW right-of-way traversing the W½SW¼ of Section 33, Township 35 North, Range 80 West of the 6th P.M., Natrona County, Wyoming, and that the Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien or interest in or to said abandoned right-of-way or any part thereof.

## I. Section 912

On appeal, the first question to be addressed is the applicability to the present case of 43 U.S.C. § 912. As indicated, the district court held that § 912 was applicable. For reasons which will hereinafter be considered, the defendants argue that § 912 does not apply to the present case. Section 912 reads as follows:

### § 912. Disposition of abandoned or forfeited railroad grants

Whenever public lands of the United States have been or may be granted to any railroad company for use as a right of way for its railroad or as sites for railroad structures of any kind, and use and occupancy of said lands for such purposes has ceased or shall hereafter cease, whether by forfeiture or by abandonment by said railroad company declared or decreed by a court of competent jurisdiction or by Act of Congress, then and thereupon all right, title, interest, and estate of the United States in said lands shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment be transferred to and vested in any person, firm, or corporation, assigns, or successors in title and interest to whom or to which title of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures of any kind as aforesaid, except lands within a municipality the title to which, upon forfeiture or abandonment, as herein provided, shall vest in such municipality, and this by virtue of the patent thereto and without the necessity of any other or further conveyance or assurance of any kind or nature whatsoever: *Provided*, That this section shall not affect conveyances made by any railroad company of portions of its right of way if such conveyance be among those which have been or may after March 8, 1922, and before such forfeiture or abandonment be validated and confirmed by any Act of Congress; nor shall this section affect any public highway on said right of way on March 8, 1922: *Provided further*, That the transfer of such lands shall be subject to and contain reservations in favor of the United States of all oil, gas, and other minerals in the land so transferred and conveyed, with the right to prospect for, mine, and remove same.

By its terms, § 912 is concerned with the disposition of abandoned railroad grants, that is, what happens when a railroad company ceases to use and occupy a right of way previously granted, whether such occurs by forfeiture or abandonment. As concerns abandonment, § 912 goes on to provide that

there cannot be "abandonment" until such is decreed by a court of competent jurisdiction or by Act of Congress. In the instant case, there was no Act of Congress decreeing that CNWT had abandoned the right of way here in question. However, the district court in the instant case did enter a decree that would appear to hold that CNWT had abandoned its right of way across the W½SW¼ of Section 33, Township 35. *Marshall,* 826 F.Supp. at 1312.

Section 912 also appears to indicate that it does not apply where an abandoned right of way is "embraced in a public highway legally established within one year after the date of said decree" of abandonment, which is not our case. Otherwise, § 912 provides in essence that when public lands of the United States have been granted to any railroad company for use as a right of way, and the railroad company thereafter ceases to use and occupy the right of way by, for example, abandonment, as decreed by a court of competent jurisdiction, then all right, title, interest, and estate in the right of way shall be transferred to and vested in anyone to whom or to which title of the United States may have been granted by way of a patent to convey the whole of the legal subdivision previously traversed by the right of way. Section 912 excepts from the foregoing lands within a municipality, an exception that has no present applicability.

■ As indicated above, the right of way granted Wyoming & Northwestern Railway Company in 1905 was pursuant to the General Railroad Right of Way Act of 1875 ("Act of 1875"). On appeal, CNWT asserts that § 912 does not apply to right of way grants under the Act of 1875. As support for that assertion, CNWT relies on *Great Northern R.R. Co. v. United States,* 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942). *Great Northern* never mentions § 912, so counsel necessarily argues that *Great Northern* impliedly

holds that § 912 has no application to right of way grants under the Act of 1875.

By way of background, *Great Northern* does point out that prior to 1872 the United States in an effort to get the railroads to "develop the West" was most generous with the railroads and, for example, at one time gave them in fee simple alternate sections along the right of way for the purpose of assisting the railroads in financing their venture. In response to public reaction, Congress began cutting back and began to grant the railroads something less than a fee simple interest. *Great Northern* did recognize, however, that even after the Act of 1875, the Supreme Court had held as late as 1915 that the right of way granted by the Act of 1875 was neither a mere easement, nor a fee simple absolute, but a "limited fee" made on an implied condition of reverter in case of nonuse. *See Rio Grande Ry. v. Stringham,* 239 U.S. 44, 36 S.Ct. 5, 60 L.Ed. 136 (1915). It was in that historical setting that § 912 was enacted in 1922.

As indicated, *Great Northern* was decided in 1942. In that case the United States brought suit against Great Northern to enjoin it from drilling for oil and gas underlying its right of way granted pursuant to the Act of 1875. The Supreme Court held that Great Northern possessed an easement only, not a fee simple or a limited fee, and had no right to oil and minerals underlying the right of way. In thus holding, the Supreme Court recognized *Stringham,* but did not regard it as "controlling." Counsel reasons that under *Great Northern* since grants of right of way under the Act of 1875 did not convey even a limited fee, but only an easement, § 912 has no applicability to the grant issued CNWT's predecessor. Under the circumstances, we do not agree with counsel that *Great Northern* holds that § 912 does not apply to any and all grants of rights of way under the Act of 1875.[2]

---

**2.** We recognize that in *State of Wyoming v. Udall,* 379 F.2d 635, 639 (10th Cir.), *cert. denied,* 389 U.S. 985, 88 S.Ct. 470, 19 L.Ed.2d 479 (1967), we did state that after *Great Northern,* "such act [§ 912] applied only to pre–1871 grants." The parties, however, agree that this statement was dicta and not binding on the panel. This Court

in *State of Wyoming v. Andrus,* 602 F.2d 1379, 1384 (10th Cir.1979) was faced with a similar situation involving, quite coincidentally, *State of Wyoming v. Udall.* In *Andrus,* we stated that an "observation" in *Udall* "which was unnecessary to the decision ... cannot be considered binding here."

Defendants next assert that by its own terms § 912 does not apply to the present case. Counsel argues that § 912 only applies where the United States has some reserved interest in the servient estate which could revert to the patentee of that servient estate. By its very language, counsel argues, the statute has effect only if the United States has some "right, title, interest and estate" in the lands in question, and that in its patent to Marshall's predecessor in interest the United States retained no interest of any sort, other than minerals.[3] We do not read the statute as counsel does. In this regard, we note that the statute is designed to cover the situation where the United States grants a railroad company a right of way over public lands and thereafter conveys or purports to convey to another "the whole of the legal subdivision or subdivisions traversed or occupied by such railroad or railroad structures...." That would, to us, appear to cover the instant case.

This particular argument was considered, and rejected, in *State of Idaho v. Oregon Short Line R.R. Co.*, 617 F.Supp. 207 (D.Idaho 1985). We are in accord with the result and rationale of *Oregon Short Line*. In that case, Judge Callister, then Chief Judge of the United States District Court for the District of Idaho, spoke as follows:

> This Court has the obligation to interpret § 912 (and §§ 913 and 316) in such a way to fully effectuate congressional intent: These statutes would be rendered null if this Court were to find them inapplicable to 1875 Act rights-of-way, for they were specifically enacted to dispose of the United States' retained interest in 1875 Act rights-of-way. *See* H.R. 217 and 843, *supra*. In enacting these statutes, Congress clearly felt that it had some retained inter-

est in railroad rights-of-way. The precise nature of that retained interest need not be shoe-horned into any specific category cognizable under the rules of real property law. Based on *[Northern Pacific Ry. Co. v.] Townsend* [190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044], *Stringham* and other decisions, congressional committeemen in the early 1920's spoke of this retained interest in terms of an "implied condition of reverter." Regardless of the precise nature of the interest, Congress clearly believed that it had authority over 1875 Act railroad rights-of-way. Sections 912, 913 and 316 evince an intent to ensure that railroad rights-of-way would continue to be used for public transportation purposes, primarily for highway transportation. With the relatively recent advent of the automobile, the 66th and 67th Congresses obviously perceived the rising importance of highway transportation; and acted to preserve, where possible, railroad rights-of-way for such use. For primarily that purpose §§ 912, 913 and 316 were enacted.

In conclusion, the Court finds that §§ 912 and 316 apply to 1875 Act rights-of-way.

## II. Adverse Possession

■ In its answer, CNWT asserted an affirmative defense "that the servient estate in the railroad right-of-way was acquired by the Chicago and Northwestern Transportation Company by adverse possession." In its answer, CNWT simply urged "adverse possession" and did not elaborate in any way on just how it had obtained fee title to the land over which their right of way ran when the right of way was not legally abandoned until

---

3. In thus arguing, counsel relies on *City of Aberdeen v. Chicago & Northwestern Transp. Co.*, 602 F.Supp. 589 (D.S.D.1984). In that case, the City of Aberdeen claimed title to an abandoned right of way within the City of Aberdeen pursuant to the applicable provisions of 43 U.S.C. § 912. The original grant of the right of way occurred in 1880 and was pursuant to the Act of 1875. It is quite true that the district court in *Aberdeen* held that 43 U.S.C. § 912 did not apply to any grant of a railroad right of way under the Act of 1875 because when the railroad abandoned its right of

way there was no "right, title, interest or estate of the United States" to vest in the municipality. Although the district court in *Aberdeen* declined to decide Aberdeen's pendent state claim, the court nonetheless indicated at p. 593 that being a mere easement, "once a railroad ceases using for railroad purposes a right of way granted after 1871, it disappears and the underlying land owner has the *use* of property he already *owns*." (emphasis in original). The district court in the instant case, like the district court in *City of Aberdeen*, did not reach the plaintiff's supplemental state claim.

the court order in the instant case was entered on December 11, 1992.

Casper Creek Development, Inc., a co-defendant, also alleged adverse possession as an affirmative defense. It did explain, in a way, just what formed the basis for its claim of adverse possession as follows:

3. Defendant Casper Creek Development, Inc. alleges as a third affirmative defense that even if the servient estate was not acquired by adverse possession by the railroad, it was acquired by Defendant Casper Creek Development, Inc. by adverse possession because Casper Creek Development, Inc. had occupied the 60–foot strip of land in the right-of-way conveyed to it by the railroad for a period of more than ten years prior to the time this action was instituted. If the railroad had not acquired title to the servient estate, such estate was vested in Brewer Ranch Company at the time the property was conveyed to J. Kent Kinniburgh and James H. Lyle in 1980, and J. Kent Kinniburgh and James H. Lyle and Casper Creek Development, Inc. have been in possession of such tract since that time. Casper Creek Development, Inc. further alleges that its possession and the possession of J. Kent Kinniburgh and James H. Lyle was actual, open, notorious, exclusive, continuous and under a claim of right and color of title.

On appeal, both CNWT and Casper Creek Development, Inc. base their adverse possession argument, in the main, on two conveyances which counsel concedes were ineffective to pass the title which they purported to convey, but were sufficient, according to counsel, to start the "clock running" for purposes of adverse possession. The first conveyance occurred on April 30, 1920, when Wyoming & Northwestern Railway Company conveyed to Chicago & Northwestern Railway Company by so-called warranty deed "all roadbeds, rights of way, station grounds, railroad grounds, yards and other lands, and all tracks, bridges, fences and structures, and all tools, machinery, material, equipment, motive power and personal property of every kind and description now held by the Grantor...." As indicated, "rights of way" was one of the described items in the deed. Counsel, as above stated, concedes this was ineffective to convey any fee title in the land underlying the right of way to Chicago & Northwestern Railway Company, but asserts that "it was sufficient to begin the running of the statute for purposes of adverse possession."

The second conveyance relied on occurred in 1980 when CNWT conveyed by quitclaim deed a 60–foot–wide strip of the 200–foot–wide right of way to Kinniburgh and Lyle, and the deed was recorded. Such, argues counsel, though ineffective to convey any fee simple in the land underlying the right of way, did, nevertheless, constitute "notice" to all, including Marshall, and that such conveyance somehow also started the statute on adverse possession.[4] Such, counsel contends, inures to the benefit of Kinniburgh and Lyle's successor, Casper Creek Development, Inc.

The Wyoming law on adverse possession is well settled. In order to acquire title to the land of another in this manner, the claimant "must demonstrate actual, open, notorious, exclusive and continuous possession for the statutory period, hostile, *and* under color of title or claim of right." *Turner v. Floyd C. Reno & Sons, Inc.,* 769 P.2d 364, 367 (Wyo. 1989) (emphasis added). To the same effect, *see Osborn v. Pine Mountain Ranch,* 766 P.2d 1165, 1167 (Wyo.1989) and *Doenz v. Garber,* 665 P.2d 932, 935 (Wyo.1983).

Assuming, for the sake of argument, that the 1920 deed from Wyoming & Northwestern Railway to Chicago & Northwestern Railway Company and the 1980 deed from

---

4. In *Energy Transp. Sys., Inc. v. Union Pacific R.R. Co.,* 606 F.2d 934, 938 (10th Cir.1979) we stated that the "true holding" in *Northern Pacific Ry. Co. v. Townsend,* 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903) was "that the railroad cannot alienate any interest in the right of way which was granted it by the United States for the express purpose of building a railroad." In this same vein, the Supreme Court in *Townsend* had reasoned that since the railroad could not alienate its interest in a right of way, the "possession by individuals of portions of the right-of-way cannot be treated without over-throwing the Act of Congress, as forming the basis of an adverse possession which may ripen into a title good as against the railroad company."

CNWT conveying 60 feet of the 200–foot–wide right of way to Kinniburgh and Lyle were sufficient to create a "color of title" in the two grantees, such conveyances certainly do not, in and of themselves, show any actual, open, notorious, exclusive, continuous, and hostile possession of the strip of land underlying the right of way for any period of time. It is hard for us to conceive how they could, when it is remembered that CNWT was actually using its right of way until January 15, 1989, and did not complete track removal until August 31, 1990, and there was no court-approved abandonment until the district court's order of December 11, 1992.

Similarly, the affidavits of Lyle and Forgey are, in our view, insufficient to inject the issue of adverse possession into the case as being a genuine issue of material fact. Such did not tend to show actual, open, notorious, exclusive, continuous, and hostile possession of the strip of land underlying the right of way for any period of time. And again, such must be viewed in light of the fact that CNWT did not abandon its right of way until December 11, 1992.

Judgment affirmed.